**FILED**
**CLERK**

12:53 pm, Nov 15, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MICHAEL STRZELECKI,

      Petitioner,

      -v-

ROBERT CUNNINGHAM,

      Respondent.
------------------------------------------------------X

Case No. 15-cv-0133 (SFJ)
**Memorandum and Order**

FEUERSTEIN, S., Senior District Judge:

## I.    <u>Introduction</u>

Presently before the Court is the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254,[1] of Petitioner Michael Strzelecki ("Petitioner" or "Strzelecki"), seeking the reversal of his state court conviction. (*See* ECF No. 4; hereafter, the "Petition".) Respondent Robert Cunningham ("Respondent") opposed the Petition asserting Petitioner's "claims do not merit relief." (Answer (ECF No. 9), ¶2.) For the reasons that follow, the Petition is DENIED.

## II.    <u>Background</u>

The following facts are adduced from the instant Petition and the underlying record,[2] the parties' familiarity with which the Court assumes.

---

[1] For convenience and unless otherwise noted, further references to 28 U.S.C. § 2254 will simply be to the code section, *i.e.*, "§ 2254".

[2] This background is primarily drawn from the County Court trial transcripts. (*See* ECF No. 9-4.) For convenience, the Court notes that ECF No. 9-4 is broken down accordingly:
     (1.)  ECF No. 9-4 at 1-126 is the October 7, 2011 trial transcript;
     (2.)  ECF No. 9-4 at 127-278 is the October 11, 2011 trial transcript;
     (3.)  ECF No. 9-4 at 279-382 is the October 12, 2011 trial transcript;
     (4.)  ECF No. 9-4 at 383-429 is the October 13, 2011 trial transcript; and
     (5.)  ECF No. 9-4 at 430-538 is the October 14, 2011 trial transcript.
However, hereafter, citations to trial transcripts will use the page numbers assigned in the transcripts and not those generated by the Court's Electronic Case Filing (ECF) system.

*A. Facts Giving Rise to Petitioner's Conviction*

Petitioner had been married to Joann Springer (hereafter, "Springer"), with whom he had two daughters, "L" and "S". In 2008, L was seven years old; sometimes she would sleep in her parents' bedroom. One night in January 2008, L was sleeping in her parents' bed when she was awakened by her father, Petition, who was touching her vagina with something fluffy on his finger, which item he put inside L's vagina. Her underpants had been pulled down. When L asked Petitioner what he was doing, he replied, "Nothing."[3] Petitioner also instructed L not to tell anyone about the incident.

In 2010 Petitioner and Springer were experiencing marital strife and sleeping in separate bedrooms. Springer wanted Petitioner to move out of the marital home, but he refused. Venting her frustration about the situation, Springer sent an email to her sister, Wendy Ellers (hereafter, "Ellers") in late October 2010 stating, among other things, that she needed to do something drastic so Petitioner would believe Springer wanted him to move out.

In the beginning of November 2010, a former tenant in Petitioner's home reported that Petitioner abused his daughters. Thereafter, on November 2, 2010, an investigation ensued with two detectives, Ness and Desmond, and a CPS worker, Freely, going to the Strzelecki residence to investigate the complaint. Petitioner and Springer permitted Ness to speak with L, who was then 9 years old, and S, who was then 13 years old.

L initially denied that she had been touched inappropriately. Thereafter, the detectives and Freely spoke with Springer, who recounted that on L's eight birthday, L had told Springer that she thought she had something pink stuck in her vagina. This prompted Springer to look at L's vagina, which, she told Ness, looked different from her other daughter's vagina. Explaining

---
[3] (*See* October 11, 2011 Trial Tr. at 100.)

to Springer what the CPS report indicated, Ness requested that Springer bring her daughters to the police precinct the following evening to allow the detective to speak to L and S again. Springer complied.

On November 3, 2010, when Ness spoke with L the next evening at the precinct, L told the detectives about telling her mother of the pink, fuzzy item on Petitioner's finger that Petitioner placed in her vagina. She acknowledged that her father, Petitioner, had given her a bad touch. L told Ness that she (L) did had not disclose earlier what had occurred because she was afraid that she would get in trouble. L also described a time when she was awakened by Petitioner touching her vagina, which Ness understood to be a separate incident. Following this second interview, Ness had Springer contact Petitioner to request he come to the precinct, which he did.

Petitioner was brought to a room where Ness read Petitioner his rights, which he indicated he understood and waived. After Ness explained what had been reported, Petitioner initially denied any inappropriate touching of L, but then explained that any such touching could have been accidental, claiming he was a restless sleeper. He told Ness that, if he could afford it, he would be willing to take a lie detector test. Ness offered to have the police department polygraph section administer such a test upon Petitioner, which Petitioner accepted.

The test was administered on the evening of November 4, 2010 by Detective Shea ("Shea"). Shea advised Petitioner: about the process of the test; the need to complete paperwork, including a release form stating Petitioner's consent to the test, a medical form, and a background form; of his constitutional rights and his rights regarding the examination; and, that he was not under arrest. Strzelecki waived his rights and voluntarily submitted to the polygraph test. After the examination was completed and Shea had reviewed the results, he spoke with

Petitioner, who then stated he had accidentally touched L's vagina three years earlier. Thereafter, Ness retrieved Petitioner from the examination room, brining him to a conference room where he was interviewed by the detectives.

During that subsequent interview, Petitioner discussed three different incidents where he touched L's vagina. Thereafter, a written statement was taken; after being advised of his rights and waiving them, Petitioner reviewed and signed the statement. (*See* Trial Court Files (ECF No. 9-6) at 12-13.) Petitioner was then arrested. In lieu of speaking with his wife and daughters after his arrest, Petitioner wrote them a letter, stating: "I am sorry for this mess and I hope to see you soon." (*See id.* at 11.)

### B. State Court Procedural Background

A jury trial commenced on October 7, 2011, in the County Court of Suffolk County (hereafter, the "County Court" or "trial court"). (*See* id. at 104-09.) Defense counsel claimed that because of the situation in the Strzelecki household, L had reason to fabricate allegations of sexual abuse against her father, Petitioner. (*See* Oct. 7, 2011 Trial Tr., 28, 32-33.) The People's witnesses included, *inter alia*, Detectives Shea and Ness, and L. (*See id.* at 108-10.) As part of its case-in-chief, the People introduced into evidence, *inter alia*, Petitioner's signed statement and his letter to his family. (*See id.* at 108 (People's Ex. 3); at 109 (People's Ex. 5); *see also id.* at 113.)

In his defense, Strzelecki initially sought to call Ellers, but the trial court first demanded an offer of proof. (Oct. 13, 2011 Trial Tr. at 10.) Defense counsel stated:

> She's . . . Springer's sister. She's familiar with the family. She's been with them. She communicates with . . . Springer and the family. She has a daughter that goes over to the house all the time. She's been to the household. She knows the scene of the household before the events occurred here. And after the events

occur[ed]. She can tell us about family dynamics during that time
period.

There also was an incident, that I will be bringing up with
her, that she herself was a victim of a sex abuse by someone in that
household who is not . . . Strzelecki. And that is basically most of
my offer of proof.

(*Id.* at 10:16-11:5.) The trial court precluded Petitioner from calling Ellers, ruling: "I don't think

it is relevant, probative, material, and it is complete hearsay. Complete." (*Id.* at 11:7-9.)

Strzelecki proceeded to call Springer, whom he was originally precluded from calling.

The trial court reconsidered its earlier denial of Strzelecki's *in limine* motion regarding the

calling of Stringer as a defense witness, stating:

The defense, in its opening statement, suggested that, based on the
circumstances of the defendant's marriage, there was a motive to
fabricate the reporting of the alleged crimes. The defense was
directed . . . to make an offer of proof *in limine*. The court then
determined that the defense had not met its burden showing that
. . . Springer had any testimony to offer that would be probative,
material and relevant to this case. At not time, either on the offer
of proof regarding. . . Stringer, or on the cross-examination of the
alleged victim or the police officers, has the defense ever asked
any questions concerning . . . Springer's interaction with her
daughter, [L], the police, CPS and the CPS complainant, as to
whether or not [L] was told to fabricate her story.

The court has considered the recent decisions in 2011, from
the Second Department, which are slip opinions, *People vs.
Spencer*, Slip Op[.] at 06390, and *People vs. Klem*, Slip Op[.] at
00533. In those cases, our appellate division determined the court
has discretion.

After considering those cases, the court in its discretion,
has allowed defense counsel to call . . . Springer as a witness on
the defendant's behalf. However, . . . counsel is bound by her
answers. If . . . Springer testifies concerning her daughter's
reporting of the case and denies any knowledge of fabrication, the
defense is bound by that answer and may not call in another
witness to impeach . . . Springer.

(*Id.* at 2:11-3:21.) In noting its objection to the ruling, the People stated that while *Spencer* stood

for the proposition that extrinsic proof tending to establish a motive to fabricate is never

collateral, when such evidence is too remote, the court has the discretion to exclude such evidence. (*See id.* at 4:8-15.) The prosecution asserted this was such a case:

> The evidence of a motive to fabricate requires extensive speculation. And it also is very remote. B[y] all of the evidence in this case, the district attorney has established that neither the mother nor the child are in fact the reporter to the police, or CPS, of the crimes that have occurred. So for her to have a motive to fabricate the reporting of the crimes, either her or her daughter[, t]he daughter would have to be the reporter.
> This entire matter was brought before law enforcement authorities and CPS by a report of a separate individual, an ex-tenant – it already has been established through cross-examination of the child, the child never had any conversation with this ex-tenant. So I do believe that the court's ruling, which established that in fact that the motive to fabricate in this case is going to require extreme speculation, and that is why it would be improper for the defense to call [Springer.] * * *
> It is [the People's] position that in this case, the defense has not established any ability to call a witness that is going to establish any motive to fabricate, because in fact the witness they are going to call was not the reporter[,] nor was her child.

(*Id.* at 4:17-5:23.)

Thereafter, Springer testified about her marital relationship with Petitioner, including that their relationship had deteriorated to the point where she was contemplating divorce and wanted him to leave the marital house, offering him money to do so. (*See id.* at 12:11-17:15.) She also testified about sending an email to her sister, Ellers, complaining about Strzelecki and wanting him to leave. (*See id.* at 17:16-27.) After several sustained objections, defense counsel was able to admit into evidence the last paragraph of the email, which stated:

> It is not worth talking to Mike [*i.e.*, the Petitioner]. He won't talk to me. He doesn't get it. I need to do something drastic or he will not believe me. I'm working on it. I need to give him 60 days [*sic*] notice to move out. He has no tenants now and no way to pay the mortgage. [S] is hassling him about a job daily. He sleeps in [L]'s bed most days and Linda sleeps with me. He does know his time is limited, though. He can't deal with it so he doesn't.

(*Id.* at 34:9-17 (read into the record by Springer); admitted as Defendant's Trial Ex. C (*see id.* at 33:10-34:5).)  Springer further testified, *inter alia*, that:  L never told her (Springer) that she (L) was abused (*see id.* at 35:21-24); she never called CPS (*see id.* at 37:12-13); she never saw a finger vibrator in the marital home (*see id.* at 37:20-24).

On cross-examination, Springer provided an explanation about the email, *to wit*:

> Q:  Ms. Springer, when you make reference to the fact that you
> needed to do something "drastic", in any way, shape, or form, did
> that something drastic include fabricating allegations of sex abuse
> against [Strzelecki]?
>> [Defense Counsel]:  Objection.
>> The Court:  Overruled.
> A:  Absolutely not. Absolutely not.

(*Id.* at 41:5-12.)  When further cross-examined whether she asked L "to make up a story of sexual abuse against her father," Petitioner, Springer responded, "No, that is ridiculous."  (*Id.* at 41:13-16.)  She also testified that she had "[a]bsolutely not" witnessed L being sexually abused by Petitioner (*see id.* at 41:17-20) and reiterated that she never reported any allegations of sexual abuse of her daughter by Petitioner to either CPS or the police.  (*See id.* at 41:21-25.)  There was no re-direct of Springer.  Petitioner called no other witnesses.  (*See id.* at 42:12-15.)

At the conclusion of the five-day jury trial, Petitioner was convicted on October 14, 2011 of one count of Aggravated Sexual Abuse in the Third Degree in violation of New York Penal Law § 130.61, and one count of Sexual Abuse in the First Degree, in violation of New York Penal Law § 130.65, both Class "D" felonies.  Thereafter, on November 15, 2011, Petitioner was sentenced to concurrent determinate terms of four years' imprisonment followed by ten years' post-release supervision.

*C. Petitioner's Direct Appeal and § 440.10 Motion*

On direct appeal, Petitioner raised five arguments, three of which rested upon the claim that his constitutional rights to a fair trial and due process were denied by:

(1.) being prevented from presenting the defense he wanted since the trial court prohibited him from calling Ellers, whose testimony would have been relevant and probative of his defense theory that because of his marital problems with Springer and Springer's desire to have Petitioner leave the marital home, which he refused to do, Springer convinced L to fabricate the sexual abuse allegations against him (*see* Petitioner's Appellant Brief (ECF No. 9-11) at 13-14);

(2.) requiring defense counsel to conduct a "mini hearing" of Springer outside of the jury's presence before deciding whether Petitioner could call Springer as a defense witness, after having already made an offer of proof regarding the relevance and probative value of Springer's testimony, so that Petitioner's trial strategy was improperly exposed to the prosecution, thereby compromising his right to present a defense (*see id.* at 17-18); and

(3.) permitting Shea's testimony about administering a polygraph test of Petitioner followed by Petitioner's admission of toughing L's vagina:

> constituted impermissible inferential bolstering when the jury was permitted to hear testimony that [Petitioner], after taking the polygraph examination administered by [Shea], confessed to sexually abusing his daughter [L]. In effect, this testimony improperly conveyed to the jury that [Petitioner] had in fact failed the polygraph test. The inference that [Petitioner] failed the test negated the curative instruction provided by the trial court to the jury.

(*Id.* at 21-22 (further conceding that "this error was not preserved for appellate review").)

Petitioner's two additional grounds for reversal were that his conviction was against the weight of the evidence (*see id.* at 23-25) and that his sentence was excessive (*see id.* at 26-30).

The New York Supreme Court, Appellate Division, affirmed Petitioner's convictions, ruling:

8

(1.) "the County Court did not deprive [Petitioner]of the right to present a defense by precluding him from producing his sister-in-law [*i.e.*, Ellers] as a defense witness," as it was "largely" hearsay, cumulative, and at best, marginally relevant;

(2.) "the County Court did not improvidently exercise its discretion in conducting an inquiry outside of the presence of the jury concerning the admissibility of the testimony of [Springer] as a defense witness;"

(3.) Petitioner did not "preserve for appellate review his contention that the County Court erred in admitting certain evidence of the circumstances of [the] polygraph examination," which, in any event, would be a harmless error;

(4.) "that the verdict of guilt was not against the weight of the evidence;" and

(5.) "[t]he sentence imposed was not excessive."

*People v. Strzelecki*, 108 A.D.35 644, 645-46, 968 N.Y.S.2d 196 (N.Y. App. Div. July 10, 2013). 646).  Petitioner's application to the Court of Appeals of New York for leave to appeal the appellate court's decision was denied.  *See People v. Strzelecki*, 22 N.Y.3d 959, 977 N.Y.S.2d 190 (Table) (N.Y. Oct. 31, 2013).

In February 2014, Petitioner moved pursuant to CPL §440.10 for an order vacating the judgment entered against him, which the Supreme Court, County of Suffolk, denied without hearing on May 27, 2014.  (*See* ECF No. 9-10 (hereafter, the "§440 Decision").[4])  Petitioner moved for leave to appeal that decision, which motion was denied on or about May 12, 2015.

---

[4] Petitioner's §440.10 motion "focuse[d] upon alleged non-disclosure of certain CPS records," arguing it was a *Brady* violation by the prosecution and evidenced the ineffective assistance of defense counsel.  The court rejected both arguments, stating that the "trial transcript unequivocally reveals that the entire CPS records were provided to counsel" and the defense. (§440 Decision at 2; *see also id.* at 3.)  Neither of those issues are before this Court.

*D. The Instant Action*

1. <u>Petitioner's Petition</u>

Petitioner petitioned this Court for a writ of habeas corpus pursuant to § 2254. The Petition was dated December 31, 2014 but, was filed on January 9, 2015(*see* ECF No. 1) and amended on January 21, 2015. (*See* ECF 4; *see also* ECF No. 3 (letter from Petitioner explaining amendment).) He challenges his state court conviction on four grounds: (1) denial of Petitioner's constitutional right to call witnesses (*see* Petitioner at 3[5]); (2) despite Petitioner's offer of proof, the state court's having made Petitioner's defense counsel conduct a direct examination outside the presence of the jury (*see id.* at 5); (3) "improper bolstering" by Shea (*id.* at 6); and (4) that Petitioner's conviction was against the weight of the evidence (*see id.* at 8).

(*a.*) *Ground I: Denial of Right to Call Ellers*

Petitioner contends that his defense counsel made an offer of proof regarding the testimony of Ellers, arguing her testimony would have established a motive for Springer to accuse Strzelecki of a crime. (*See id.* at 3, "Ground One: (a)(5).) He asserts that the state court "should have ruled on questions of admissibility upon proper objection." (*Id.*, Ground One: (a)(3).) Petitioner also raised this issue in his direct appeal (*see id.* at 4, Ground One: (c)), but did not raise it through a post-conviction motion of petition for habeas corpus in the state trial court (*id.* at (d)(1)).

(*b.*) *Ground II: Questioning Springer Outside of Jury's Presence*

Petitioner further argues that after making an offer of proof, the state court had defense counsel *voir dire* Springer outside of the jury's presence. (*See id.* at 5, "Ground Two".) In

---

[5] The page numbers cited are those generated by ECF, which do not correspond to the page numbers on the Petition.

support of this argument, Petitioner states Springer had been with L at the police station, medical office, and mental health facility. (*See id.* at Ground Two: (a)(3).) Moreover, he contends that Springer "sent various emails to Ellers for motive to get [Petitioner] out of the house." (*Id.* at (a)(5).) By having to conduct the *voir dire* without the jury's present, Petitioner claims his defense counsel was forced to reveal trial strategy. (*See id.* at (a)(4).) While Petitioner raised this issue on direct appeal in state court, he did not raise it through a post-conviction motion or a habeas petition in the state trial court. (*See id.* at (c) & (d).)

(*c.*) *Ground III: Permitting Shea's Testimony*

Petitioner also claims that Shea, the detective who administered his polygraph examination, "[h]inted to the jury that [Petitioner] failed" the polygraph test and that Petitioner confessed to the charged crimes after the polygraph test was completed, which the Petition characterizes as "[i]mproper bolstering". (*Id.* at 6, "Ground Three"; *see also id.* at Ground Three: (a)(1).) He also argues that the state court's curative instruction was insufficient. (*See id.* at (a)(2).) Petitioner concedes he did not preserve this issue, but asks this Court to use "interest of justice" jurisdiction to consider this basis for granting his Petition. (*See id.* at (a)(3); *see also id.* at (c) (indicating issue raised on direct appeal).)

(*d.*) *Ground IV: Conviction Against the Weight of Evidence*

Finally, Petitioner asserts that his "[c]onviction was against the weight of evidence" since: (1) the physical examination of L "showed no evidence of sexual abuse"; (2) L never told anyone she was abused and she made several inconsistent statements; (3) the abuse took place more than two years before Petitioner's trial; and (4) "Defendant's statement is uncorroborated." (*Id.* at 8, "Ground Four: (a)(1-5).) These claims were raised upon direct appeal (*see id.* at (c)), but not raised in a post-conviction motion or habeas petition in the state trial court (*see id.* at (d)).

2. <u>Respondent's Answer</u>

In compliance with the Court's August 12, 2015 Order to Show Cause ("OSC") (*see* ECF No. 8), the Respondent filed opposition to the Petition (styled as an "Answer"). (*See* Answer (ECF No. 9); *see also* Mem. Opp'n (ECF No. 9-1)(hereafter, "Opp'n").) Respondent maintains that Strzelecki's Petition "restates several of his state-court claims," and that to the extent he "has articulated cognizable federal claims, he has failed to demonstrate that the state court's determinations were contrary to or involved an unreasonable application of clearly established federal law." (Answer, ¶28.) Regarding Shea's testimony, Respondent contends that Petitioner has not established cause and prejudice for his procedurally defaulted claim, which would overcome the procedural bar to this Court's consideration of that argument (*see id.* at ¶29), and that, even on the merits, this argument does not establish a basis for relief. (*See id.*)

(*a*.) *Ground I:  Denial of Right to Call Ellers*

Respondent asserts Petitioner's first ground fails as the County Court's evidentiary ruling on the proffered testimony of Ellers was neither an abuse of discretion nor a deprivation of Petitioner's constitutional rights. (*See* Opp'n at 7, 11.) He states that the County Court afforded Petitioner the opportunity to make an offer of proof before making its ruling (*see id.* at 7-8), and that "the purpose of calling [Eller] was to do no more than to try to imply . . . Springer was responsible for [L]'s allegation[.] . . . [Therefore,] the court properly precluded her testimony." (*Id.* at 11; *see also id.* at 9 (conceding Petitioner has a due process right to present witnesses of his own choice but, arguing such right "does not subvert the requirement that the witness's testimony be relevant and admissible").)

(*b*.) *Ground II: Questioning Springer Outside of Jury's Presence*

Respondent asserts that the trial court's requiring defense counsel to voir dire Springer outside of the jury's presence before deciding whether to permit Springer to testify, "was within the court's discretion in managing the flow of evidence to require some greater delineation of the proposed testimony before ruling on its admissibility." (*Id.* at 13.) In any event, "how the trial court manages its evidentiary determination does not present a federal constitutional claim for this Court's review." (*Id.*) Nor has the Petitioner shown any prejudice by the voir dire questioning of Springer. (*See id.*; *see also id.* at 15.)

(*c*.) *Ground III: Permitting Shea's Testimony*

Respondent states "[t]his claim was rejected in the state courts on both procedural and substantive grounds, so that it is procedurally defaulted." (*Id.* at 16.) Moreover, the testimony of Shea, the polygraph examiner, was introduced "as relevant to the context in which Strzelecki confessed to sexually abusing his daughter." (*Id.*) Therefore, this ground is no more than "a challenge to a trial court evidentiary ruling, which is generally beyond the province of a federal habeas court to re-examine. (*Id.* (citing *Estell v. McGuire*, 502 U.S. 62, 67-68 (1991); further citations omitted).) Moreover, there was no prejudice to the Petitioner because the County Court gave a limiting instruction to the jury, which a jury is presumed to follow. (*See id.* at 17-18.)

(*d*.) *Ground IV: Conviction Against the Weight of Evidence*

Respondent asserts that, although Petitioner presented his "conviction against the weight of evidence" argument in state court, such that it would not be procedurally barred here, because that argument is based purely upon state law, a federal habeas court cannot review it. (*See id.* at 19 (quoting *Martin v. Brown*, No. 08-cv-316, 2010 WL 1740432, at *7 (E.D.N.Y. Apr. 29, 2010); further citations omitted).) Indeed, "Petitioner's guilt was established by [L]'s testimony

detailing the sexual abuse[, which] . . . testimony was then corroborated by [P]etitioner's admissions . . . ." (*Id.*) Hence, the jury's verdict was not against the weight of the credible evidence. (*See id.*)

Respondent further notes that "the same deference afforded juries as the triers of fact is given by the habeas court to the appellate courts' review of those findings." (*Id.* at 21; *see also id.* at 20-21 (asserting that a federal habeas court is to view the evidence in the light most favorable to the prosecution, "'constru[ing] all permissible inferences in its favor' and 'resolving all issues of credibility in favor of the jury's verdict.'" (quoting *Sanford v. Burge*, 334 F. Supp.2d 289, 303 (E.D.N.Y. 2004); further citation omitted)).) Thus, he posits, as this is not a case where the record is so totally devoid of evidentiary support that a due process issue has been raised, habeas corpus relief is not warranted. (*See id.*)

### 3. The Lack of a Reply

Petitioner did not reply the Respondent's Answer and has not otherwise supplemented his filings. (*See* Case Docket, *in toto;* OSC, ¶4 (providing Petitioner the opportunity to file a reply to Respondent's response), and corresponding docket text (noting service of OSC upon Petitioner); *see also, e.g.,* Petition at 14 (requesting Petition be held in abeyance pending state court's determination of § 440.10 Motion and stating, *inter alia*, "I will let you know when I have exhausted all my state remedies on this pending appeal").)

## III. Discussion

### A. Applicable Standards

#### 1. The § 2254 Standard of Review

"A petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the

Constitution, laws, or treaties of the United States." *Crowder v. Ercole*, No. 09-cv-3401, 2012 WL 5386042, at *2 (E.D.N.Y. Nov. 2, 2012) (citing § 2254). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also McBride v. Perez,* No. 13-cv-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015)(quoting *Estelle*). A federal habeas court applies the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Terrell v. Kickbush*, No. 17-cv-7027, 2019 WL 3859512, at *4 (E.D.N.Y. Aug. 16, 2019). In relevant part, § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "AEDPA establishes a deferential standard of review: 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001)(quoting *Williams*, 529 U.S. at 411); *see also Clapper v. Yelich*, No. 9:18-cv-102, 2019 WL 185684, at *4 (N.D.N.Y. Jan. 14, 2019)("Th[e AEDPA] standard is 'highly deferential' and

'demands that state-court decisions be given the benefit of the doubt.'" (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011)(per curiam); further citation omitted)); *McBride*, 2015 WL 5245072, at *8 ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'" (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Martin v. Brown*, No. 08-cv-316, 2010 WL 1740432, at *7 (E.D.N.Y. Apr. 29, 2010)(quoting *Gilchrist*).

### (*a.*) § 2254(d)(1)

"'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005)(quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Terrell v. Kickbush*, 2019 WL 3859512, at *4. "A ruling on the merits is 'contrary to' clearly established Supreme Court precedent 'if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decides a case differently than th[e] Court has on a set of materially indistinguishable facts.'" *Crowder*, 2012 WL 5386042, at *2 (quoting *Williams*, 529 U.S. at 412-13)(brackets and ellipsis in *Crowder*). "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong: even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014)(internal quotation marks and citations omitted). "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id.* at 427 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")). Moreover, "under the AEDPA, the factual findings of state courts are presumed to be correct." *McBride*, 2015 WL 5245072, at *8 (citing § 2254(e)(1), *and Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997)). This presumption can be rebutted only upon "clear and convincing evidence." § 2254(e)(1); *see also McBride*, 2015 WL 5245072, at *8. Finally, "[t]he Court is mindful that, as with all pro se pleadings, a habeas petition filed pro se is to be construed liberally." *Crowder*, 2012 WL 5386042, at *2 (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)); *see also Alonge v. Chappius*, No. 12-cv-542, 2019 WL 1642449, at *6 (E.D.N.Y. Apr. 16, 2019)("[T]he court must interpret petitioner's pleadings as raising the strongest arguments they suggest." (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

(*b.*)  *§ 2254(d)(2)*

As to a habeas challenge pursuant to § 2254(d)(2):

> The Supreme Court has made clear that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 175 L.Ed.2d 738 (2010). Where "[r]easonable minds reviewing the record might disagree" as to the relevant finding, that is not sufficient to supplant the state court's factual determination. *Rice v. Collins,* 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L.Ed.2d 824 (2006). Nevertheless, the state court's finding might represent an "unreasonable determination of the facts" where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, *see Wiggins v. Smith,* 539 U.S. 510, 528, 123 S. Ct. 2527, 156 L.Ed.2d 471 (2003), or where the court ignored highly probative and material evidence, *see Miller–El v. Cockrell,* 537 U.S. 322, 346, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003).
> Of course, AEDPA "sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it," *Fry v. Pliler,* 551 U.S. 112, 119, 127 S. Ct. 2321, 168 L.Ed.2d 16 (2007), so *even if the standard set forth in section 2254(d)(2) is met, the petitioner*

> *still "bears the ultimate burden of proving by a preponderance of*
> *the evidence that his constitutional rights have been violated,"*
> *Epps v. Poole,* 687 F.3d 46, 50 (2d Cir. 2012).

*Cardoza v. Rock*, 731 F.3d 169, 177-78 (2d Cir. 2013)(emphasis added); *see also id*. at. 177 n.5 (noting: (1) the courts have had "fewer opportunities to consider what constitutes an 'unreasonable determination of the facts'" pursuant to § 2254(d)(2), compared with § 2254(d)(1); and, (2) the Supreme Court "has yet to explain" the interaction between § 2254(d)(2) and § 2254(e)(1), the subsection that creates a statutory presumption that a state court determination of a factual issue is correct); *cf.*, *Nowakowski v. New York*, No. 13-cv-3709, 2018 WL 6421056, at *6[6] (E.D.N.Y. Dec. 6, 2018) ("[F]or claims of 'unreasonable determination[s] of the facts' under [sub]paragraph (d)(2), an applicant bears the additional burden of 'rebutting the state court's factual findings 'by clear and convincing evidence.'" (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013); further citation omitted)).

---

[6] The *Nowakowski* Court noted:

> The Supreme Court has twice declined to address the relationship between [§] 2254(d)(2) and [§] 2254(e)(1). *Burt*, 571 U.S. at 18, 134 S. Ct. 10 ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), and we need not do so here . . . . For present purposes, it is enough to reiterate "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance") (quoting, *Wood v. Allen*, 558 U.S. 290, 293, 130 S. Ct. 841, 175 L.Ed.2d 738 (2010)). The Second Circuit has likewise declined to do so. *Garguilio v. Heath*, 586 F. App'x 764, 766 n.1 (2d Cir. Oct.10, 2014); *Jones v. Murphy*, 694 F.3d 225, 238 n.4 (2d Cir. 2012), *cert. denied*, 568 U.S. 1165, 133 S. Ct. 1247, 185 L.Ed.2d 192 (2013).

*Nowakowski*, 2018 WL 6421056, at *6 n.6.

2. <u>Procedural Bar to Federal Habeas Review</u>

(*a*.) *Failure to Exhaust*

"A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court." *McBride*, 2015 WL 5245072, at *6 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); § 2254(b)(1), (c)); *see also Allan*, 2012 WL 70839, at *7 (same); *Reid v. Duncan*, No. 11-cv-3822, 2012 WL 5987719, at *3 (S.D.N.Y. Sept. 25, 2012)(discussing two-step exhaustion analysis; collecting cases)(report & recommendation), *adopted by* 2012 WL 5992090 (Nov. 30, 2012). To do so, a petitioner "must have 'fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim,' and thus 'giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Id.* at *7 (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal quotation marks and citations omitted)); *see also Allan*, 2012 WL 70839, at *7 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (further citation omitted)). "A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court." *Id.* (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)); *Reid*, 2012 WL 5987719, at *4 (block quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)).

> However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

*Id.*

(*b.*) *State Procedural Requirements*

A petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991); *see also, e.g., Michigan v. Long*, 463 U.S. 1032, 1041 (1983); *Nowakowski*, 2018 WL 6421056, at *6 (stating claims that a state court denied based upon an adequate and independent state procedural rule bars federal habeas review). A procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)(citation omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-63, 265 n.12 (1989)(citations omitted). Further, a state court's reliance on an independent and adequate procedural bar forestalls habeas review even if the state court also rejected the claim on the merits in the alternative. *See, e.g., id.* at 264 n.10 (explaining that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where it "explicitly invokes a state procedural bar rule as a separate basis for [its] decision"); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996). It is only where a petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claim[] will result in a fundamental miscarriage of justice" that a federal habeas court may review a procedurally barred claim. *Coleman*, 501 U.S. at 750; *see also Terrell*, 2019 WL 3859512, at *5; *Allan v. Conway*, No. 08-cv-4894, 2012 WL 70839, at *8 (E.D.N.Y. Jan. 10, 2012).

*B.  The Present Case*

Respondent has not raised any jurisdictional or exhaustion challenges to Strzelecki's

Petition or any basis for denying review of Strzelecki's Petition.  *See, e.g.*, *Murray v. New York*,

No. 13-cv-5212, 2016 WL 11600770, at \*4 (S.D.N.Y. Apr. 4, 2016)(discussing federal habeas

jurisdiction)(report & recommendation), *adopted by* 2019 WL 2502101 (S.D.N.Y. June 17,

2019); *see also supra* Part III(A)(2)(a)(discussing exhaustion).

### 1.  Petitioner's Ground I:  Denial of Right to Call Ellers

"Whether rooted directly in the Due Process Claus of the Fourteenth Amendment . . . or

in the Compulsory Process of Confrontation clauses of the Sixth Amendment, the Constitution

guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479,

485 (1984))(internal citation omitted); *see also Scrimo v. Lee*, 935 F.3d 103, 112 (2d Cir.

2019)(collecting cases).  Yet, "'[t]he accused does not have an unfettered right to offer testimony

that is incompetent, privileged, *or otherwise inadmissible under standard rules of evidence*.'"

*Scrimo*, 935 F.3d at 112 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988))(emphasis added);

*see also Alexander v. Ercole*, No. 06-cv-3377, 2007 WL 922419, at \*6 (E.D.N.Y. Mar. 27,

2007)("[T]he right of a criminal defendant 'to present relevant evidence is not . . . unlimited;

rather[,] it is subject to 'reasonable restrictions.'" (quoting *Wade v. Mantello*, 333 F.3d 51, 57-58

(2d Cir. 2003); further citation omitted)).  Indeed, the Supreme Court has "never questioned the

power of States to exclude evidence through the application of evidentiary rules that themselves

serve the interests of fairness and reliability—even if the defendant would prefer to see that

evidence admitted."  *Crane*, 476 U.S. at 690)(citing *Chambers v. Mississippi*, 410 U.S. 284, 302

(1973)).

At trial, when defense counsel sought to call Ellers as a witness, the following exchange

ensued:

> Defense Counsel:  The medical people weren't witnesses either.  I
> believe I'm allowed to call people who did not see the event.  I
> believe I'm allowed to call people, to show how the family in the
> household was during that time period, when these acts were
> claimed to have happened.  I think it is important that the jury gets
> an idea of what that household was all about before the allegations
> were made.  And that is why I'm calling these witnesses.
>
> The Court:  Okay.  Who is this witness?
>
> Defense Counsel:  This witness is Wendy Ellers.  She's sister of
> the last witness that we just had [*i.e.*, Springer].  Okay?  And her
> child stays over at that house all the time, and she knows Ms.
> Springer, who I attempted to put on the stand, who sent this email
> to her, to Wendy Ellers.
>
> The Court:  Is she related to Ms. Springer?
>
> Defense Counsel:  Yes, she's her sister.

(Octo. 12, 2011 Trial Tr. at 96:10-97:8.)  The People objecting, arguing Ellers' testimony was

inadmissible hearsay, not material or relevant, but was being offered to inflame the jury.  (*See id.*

at 97:17-98:4.)  The trial court did not permit Petitioner to call Ellers, explaining, "I'm going to

deny you calling that witness.  I don't think it is relevant, probative, material, and it is complete

hearsay.  Complete."  (Oct. 13, 2011 Trial Tr. at 10-11.)

On direct appeal, Petitioner argued that he sought to call Eller as a defense witness to

support his defense that due to his contentious relationship with Springer and Springer's desire to

have Petitioner leave the marital home, Springer convinced L to fabricate the sexual abuse

allegation.  (*See* Petitioner's Appellate Brief at 14.)  The Appellate Court rejected this argument,

holding that the trial court had "not improvidently exercise[d] its discretion in precluding that

testimony," since Ellers' proposed testimony regarding the relationship between Petitioner and

Springer "consisted largely of hearsay, was cumulative to other evidence, and was only marginally, if at all, relevant" and, thus, had "not deprive[d Petitioner] of the right to present a defense." *Strzelecki*, 108 A.D.3d at 645 (citing *People v. Monroe*, 30 A.D.3d 616, 617 (N.Y. App. Div., 2d Dep't 2006); *People v. Sawyer*, 304 A.D.2d 775 (2003)).

Generally, an erroneous evidentiary ruling by a state trial court does not rise to the level of a constitutional violation upon which a federal court may issue a writ of habeas corpus. *See Scrimo*, 935 F.3d at 115 ("Evidentiary errors at trial are subject to 'lenient harmless error review' on a habeas petition, *Jones*[ *v. Stinson*], 229 F.3d [112,] 120 [(2d Cir. 2000)], and only a 'substantial and injurious effect or influence in determining the jury's verdict' merits habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 638 * * * (1993)(internal quotation marks omitted)."); *see also Alexander*, 2007 WL 922419, at *5 (citing *Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987)(further citation omitted)). Indeed, evidence erroneously excluded warrants habeas relief "only if the omission deprived the petitioner of a fundamentally fair trial." *Id.* (citing *Estell*, 502 U.S. at 72; *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983), *cert. denied*, 464 U.S. 1000 (1983)). "The test for determining whether erroneous evidentiary rulings denied the defendant a fair trial centers on whether the excluded evidence would have created 'a reasonable doubt that did not otherwise exist.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)); *see also Scrimo*, 935 F.3d at 115 ("The creation of reasonable doubt satisfies the 'substantial and injurious' standard." (citing *Jones*, 229 F.3d at 120)); *Zimmerman v. Burge*, 492 F. Supp.2d 170, 193 (E.D.N.Y. 2007)(quoting *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001)). However, "while the ultimate test is whether the evidentiary ruling was material to the question of reasonable doubt, 'that inquiry may be premature if the trial court's ruling was proper.'" *Id.* at *6 (quoting *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003)).

In the instant case, "[t]he decision of the Appellate Division did not unreasonably apply federal law governing the exclusion of evidence," *id.* at *6, because it held that the trial court's discretionary decision to preclude Ellers' proffered testimony was justified as that testimony would have "consisted largely of hearsay," "was cumulative to other evidence" and, at best, was marginally relevant. *See id.* (observing that "Appellate Division ruled that the trial court's decision to preclude the testimony offered for bias was justified because th[at] . . . testimony would have been cumulative"). Indeed, when Springer testified, she acknowledged the email she sent to Ellers, which addressed the marital contention in the household, Springer's frustration that Petitioner would not leave the home, and her pondering the need to do something dramatic to gain Petitioner's attention. (*See* Oct. 13, 2011 Trial Tr. at 13-26.) Moreover, there was no evidence that L fabricated the sexual abuse to help her mother (*see* Oct. 12, 2011 Trial Tr. at 92, 98); therefore, there was no "credible basis for believing that the offer [of Ellers' testimony] ha[d] a genuine nexus to the case." *People v. Lyons*, 918 N.Y.S.2d 399 (Table), 2010 WL 4227250, at *2 (N.Y. Sup. Ct., Queens Cnty. Oct. 20, 2010)("A defendant cannot waft any innuendo willy nilly into the jury box hoping that it will stick and that the jury may somehow be affected by it."); *see also, e.g., People v. Mandel*, 48 N.Y.2d 952, 953 (1979)(holding that a defendant's proffered evidence must "indicate a significant probative relation to [the] charges").

> New York law grants the trial court the "discretion to admit or preclude relevant evidence based on an analysis of its probative value versus whether it confuses the main issues and misleads the jury." *People v. Petty,* 7 N.Y.3d 277, 286 (2006) (citations omitted). The New York Court of Appeals has held that "even if the [proffered] evidence is proximately relevant, it may be rejected if its probative value is outweighed by the danger that its admission would prolong the trial to an unreasonable extent without any corresponding advantage." *People v. Davis,* 43 N.Y.2d 17, 27 (1977), *cert. denied,* 435 U.S. 998 (1978), *and cert. denied,* 438 U.S. 914 (1978) (internal quotation marks and citations omitted). Similarly, the Federal Rules of Evidence grant

trial courts the discretion to preclude relevant evidence "if its
probative value is substantially outweighed by . . . needless
presentation of cumulative evidence." Fed. R. Evid. 403.

*Alexander*, 2007 WL 922419, at \*5. Moreover, it is settled New York state law that

> [a]lthough "[t]he right to present evidence by witnesses of one's
> own choosing is a fundamental ingredient of due process" (*People
> v Morales*, 125 AD2d 605, 606 [1986] [internal quotation marks
> omitted]), and proof aimed at establishing a motive to fabricate is
> never collateral and may not be excluded upon that ground (*see
> People v Hoover*, 298 AD2d 599 [2002]), where such proof lacks a
> good-faith factual basis (*see People v Sandel*, 299 AD2d 373, 374
> [2002]), *is based solely on hearsay* (*id.; People v Simmons*, 170
> AD2d 15, 23-24 [1991]), *or is too remote or speculative* (*see
> People v Sawyer*, 304 AD2d 775, 776 [2003]; *People v Hoover,
> supra*), a trial court may, in the exercise of discretion, properly
> exclude it (*see People v Sawyer, supra; People v Sandel, supra;
> People v Hoover, supra; People v Esposito*, 225 AD2d 928, 931
> [1996]; *see also People v McGlothin*, 6 AD3d 462, 463 [2004]).

*Monroe*, 30 A.D.3d at 617 (emphasis added). Hence, as the Appellate Division held, there was

no error in the trial court's evidentiary ruling excluding Ellers' proffered testimony. Even

assuming, *arguendo*, that the exclusion ruling was erroneous, it still did not deny Petitioner of a

fair trial since, given the evidence submitted to the jury for its deliberation, including Springer's

testimony about the state of her marriage to Strzelecki and the portion of her email to Ellers

stating her need to do something dramatic, said excluded evidence would not have created a

reasonable doubt that did not otherwise exist. Thus, Petitioner's Ground I does not present a

basis warranting habeas relief.

    2. <u>Petitioner's Ground II: Questioning Springer Outside of Jury's Presence</u>

    In his direct appeal, Petitioner argued that the state trial court's voir dire of Springer

without the jury present deprived him of due process as he had the right to present his own

witnesses to establish his defense (*see* Petitioner's Appellate Brief at 15, 17) and improperly

exposed his trial strategy to the prosecution thereby compromising his right to present a defense

(*see id.* at 18).  At trial, after an offer of proof regarding the relevancy of Springer's testimony, and to avoid compromising the integrity of the trial, the trial court held a "mini hearing" in the absence of the jury where defense counsel directly examined Springer about her proposed testimony, including her sending an email to Ellers which stated, *inter alia*, that to compel Petitioner to leave the marital house, she had to do something dramatic.  (*See* Oct. 12, 2011 Trial Tr. 74:23-89:8.)  Ultimately, Petitioner was permitted to call Springer as a witness.  Relying upon *People v. Rivera*, 293 A.D.2d 286 (N.Y. App. Div., 1st Dep't 2002), the Appellate Division ruled the County Court "did not improvidently exercise its discretion" in conducting a "mini hearing" of Springer as a defense witness.  *Strzelecki*, 108 A.D.3d at 645.

Petitioner's Ground II does not present a basis to grant habeas corpus relief in this instance since, even assuming, *arguendo*, it was erroneous to do so, the trial court's voir dire of Springer outside the jury's presence did not deprive Petitioner of a fundamentally fair trial.  *See Daniel v. Conway*, 498 F. Supp.2d 673, 682 (S.D.N.Y. 2007)("An erroneous evidentiary ruling may qualify for habeas relief only if such error violated petitioner's due process rights to such an extent as to deprive him of a fundamentally fair trial.").  However, such "brief questioning to determine the relevancy of [Springer's] testimony was appropriate.  There was no prejudice because the inquiry resulted in a favorable ruling for [Petitioner], the jury was never informed of the nature of the inquiry, and there is no indication that the inquiry had any effect on [Springer]'s testimony."  *Rivera*, 293 A.D.2d at 286-87.  Indeed, as Respondent aptly argues, federal courts "have recognized the wisdom of conducting a witness voir dire as part of the offer of proof."  (Opp'n at 14 (citing *United States v. Shakur*, No. 84-cr-220, 1988 WL 31745, at *4 (S.D.N.Y. 1988)(instructing, *inter alia*, that voir dire of defense witnesses will occur outside the presence of jury)).  Moreover, as defense counsel had already made known his theory of defense in his

opening statement, *i.e.*, marital discord in the Strzelecki home which motived the fabrication of the sexual abuse allegations, having to question Springer outside the presence of the jury did not unfairly expose Petitioner's trial strategy to the prosecution, thereby depriving him of a fundamentally fair trial. However, even if requiring the "mini hearing" in the absence of the jury could, *arguendo*, be characterized as an erroneous evidentiary ruling, it is well-settled that "habeas corpus relief does not lie for errors of state law," *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006) (quoting *Lewis v. Jackson*, 497 U.S. 764, 780 (1990); internal quotation marks omitted), including evidentiary rulings. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 72-73 (2d Cir. 2011)(summary order), *cert. denied*, 565 U.S. 1181 (2102) ("Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review . . . unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings[.]" (citation omitted)). Hence, Petitioner's Ground II does not provide a basis for granting his Petition.

### 3. Petitioner's Ground III: Permitting Shea's Testimony

The crux of Petitioner's Third Ground is his disagreement with the state trial court's evidentiary ruling regarding Shea's testimony. The People presented Shea's testimony not for the truth of the polygraph results, but in connection with Petitioner's state of mind when he made his subsequent statement to the Detectives. Before the case was submitted to the jury for deliberation, the state trial court gave a limiting instruction as to Shea's testimony, instructing:

> During the course of the trial, there was testimony concerning the administration of a polygraph exam. The testimony was presented in connection with the defendant's statement to police. You are not to speculate or deliberate upon the results of any of the polygraph exam. As I instructed earlier, polygraph testing is inadmissible because it has not been proven scientifically reliable.

(Oct. 14, 2011 Trial Tr. at 87-88.)

Ground III fails because it is procedurally barred. Citing to New York Criminal Procedure Law § 470.05(2), the Appellate Division stated that Petitioner "failed to preserve for appellate review his contention that the County Court erred in admitting certain evidence of the circumstances of a polygraph examination." *Strzelecki*, 108 A.D.3d at 645. Because "[t]he Appellate Division's ruling that [P]etitioner's claim[] w[as] unpreserved for appellate review constitutes an independent and adequate state ground," *Spurgeon v. Lee*, No. 11-cv-600, 2015 WL 4610021, at 14 (E.D.N.Y. July 31, 2015)(citing *Garcia v. Lewis*, 188 F.3d 71, 77-79 (2d Cir. 1999); further citation omitted), this Court is procedurally barred from considering this claim as a basis for granting the Petition. *See Ortiz v. Bradt*, No. 13-cv-5420, 2013 WL 5775695, at *2 (E.D.N.Y. Oct. 25, 2013)( "It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review."). Further,

> [b]ecause "the Appellate Division properly relied on a procedural bar, [P]etitioner would have to show that grounds exist for reaching the merits notwithstanding that procedural bar." *Ortiz*, 2013 WL 5775695, at *2. * * * [T]o overcome this default on state procedural grounds, Petitioner must show "'cause for the default and prejudice' or . . . that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90). Here, Petitioner did not attempt to demonstrate his actual innocence, and there is nothing in the record that convinces the Court that Petitioner is actually innocent of the crimes for which he was convicted.

*Blume v. Martuscello*, No. 13-cv-4310, 2016 WL 1070847, at *11 (S.D.N.Y. Mar. 14, 2016); *see also Murray*, 2016 WL 11600770, at *7. Hence, Ground IV is unreviewable by this Court.

Even if Petitioner's Ground III was not procedurally defaulted, that claim would fail on the merits. To the extent evidence was introduced regarding the administration of a polygraph examination, it was "presented in connection with the defendant's statement to police." (Oct. 14,

2011 Trial Tr., at 87-88.)  Under New York state law, the introduction of such evidence is permissible when it is to be "considered not for its truth or falsity but, rather, . . . to be considered only with respect to [a] defendant's state of mind and the voluntariness of [his] statement."  *People v. Lucie*, 49 A.D.3d 1253, 1254 (N.Y. App. Div., 4th Dep't)(rejecting defendant's challenge to introduction of polygraph evidence; further noting that trial court delivered limiting instructions regarding consideration of the polygraph evidence).  Further, as stated *supra*, the state trial court gave a limiting instruction regarding the polygraph test.  "A jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also Murray*, 2016 WL 11600770, at *9 ("In the absence of any evidence to the contrary, the jurors must be presumed to have followed [the state court judge's] instructions concerning the applicable law."); *Hayden v. Costello*, No. 99-cv-1194, 2007 WL 509566, at *19 (N.D.N.Y. Feb. 13, 2007) ("The jury is presumed to have followed this and all of the county court's instructions.").  Nothing in the record of this case as to Shea's trial testimony demonstrates that Petitioner's conviction was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, *see* § 2254(d)(1); nor does Petitioner's conviction demonstrate an unreasonable determination of the facts in light of the evidence presented in the County Court.  *See* § 2254(d)(2).  Indeed, the Appellate Division alternatively rejected this claim on the merits, holding that "even if the admission of this evidence was error, the error was harmless, as there was overwhelming evidence of [Petitioner]'s guilt and no significant probability that any error in this regard contributed to his conviction." (*Id.* (citing *People v. Crimmins*, 36 N.Y.2d 230, 241-42 (1975)(holding that an error is prejudicial "if an appellate court concludes that there is a significant probability, rather than only a rational possibility, in the particular case that the jury would have acquitted the defendant had

it not been for the error or errors which occurred")).  Accordingly, a basis to grant habeas relief

is not found in Petitioner's Ground III.  *See McKinnon*, 422 F. App'x at 72-73; *see also Bryson v.*

*Sheahan*, No. 11-cv-749, 2013 WL 5502835, at *24 (E.D.N.Y. Oct. 1, 2013).

### 4. Petitioner's Ground IV:  Conviction Against the Weight of Evidence

Petitioner's final claim is:

> that his conviction in state court was against the weight of the
> evidence.  However, it is well established that a "weight of the
> evidence" claim is based on state law.  *See, e.g., Correa v.*
> *Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001)("A 'weight of
> the evidence' argument is a pure state law claim grounded in New
> York Criminal Procedure Law § 470.15(5), whereas a legal
> sufficiency claim is based on federal due process principles.").
> The Court cannot consider a purely state law claim on federal
> habeas review.  *See Lewis v. Jeffers*, 497 U.S. 764, 780
> (1990)("[F]ederal habeas corpus relief does not lie for errors of
> state law . . . .").  Therefore, to the extent [P]etitioner raises a
> weight of the evidence claim under state law, the Court cannot
> review it.

*Martin*, 2010 WL 1740432, at *7;[7] *see also Murray*, 2016 WL 11600770, at *9 ("A petitioner's

claim that his conviction was contrary to the *weight* of the evidence is not cognizable on federal

habeas review." (citation omitted)).

---

[7]  The Court notes that the Appellate Division rejected Strzelecki's weight-of-the-evidence claim
on two grounds:  "viewing the evidence in the light most favorable to the People," finding it
legally sufficient to establish [Strzelecki]'s guilt beyond a reasonable doubt; and, conducting an
independent review of the evidence, while according great deference to the "jury's opportunity to
view the witnesses, hear the testimony, and observe demeanor," satisfying itself "that the verdict
of guilty was not against the weight of the evidence."  *Strzelecki*, 108 A.D.3d at 645-46 (citations
omitted).

To the extent Petitioner' Ground IV can be construed as raising a federal claim that the evidence was insufficient to support the conviction, that argument is without merit.[8]

> On federal habeas review, a petitioner pressing a sufficiency-of-the-evidence challenge that has already failed in state court bears a double burden. First, the petitioner must show that the evidence was constitutionally insufficient—that viewed in the light most favorable to the prosecution, no rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 442 U.S. 307, 319 (1979). And second, []he must show that the state court decisions rejecting h[is] challenge were more than merely wrong. "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)(per curiam)(internal quotation marks omitted).

*Taylor v. Kaplan*, No. 14-cv-1402, 2017 WL 3498692, at *1 (E.D.N.Y. Aug. 15, 2017), *cert appealability denied*, 2017 WL 1418184 (2d Cir. Feb. 8, 2018); *cert denied*, 139 S. Ct. 212 (Oct. 1, 2018); *see also Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997) (instructing that a habeas petitioner challenging his conviction on the ground that it was not supported by

---

[8]

> Of course, to the extent [P]etitioner raises a federal insufficiency of the evidence claim in the instant [P]etition, such a claim is barred from review because [P]etitioner did not exhaust this claim in state court. On his state court appeal, [P]etitioner asserted only a weight of the evidence claim, which is a distinct claim. *See People v. Bleakley*, 508 N.E.2d 672, 674 (N.Y. 1987) (acknowledging that each doctrine "requires a discrete analysis"). Thus, because [P]etitioner did not raise this federal claim in state court, he has failed to exhaust it. Petitioner has not demonstrated cause for the default or prejudice resulting therefrom, nor a miscarriage of justice, and, therefore, [P]etitioner's sufficiency of the evidence claim is procedurally barred. In any event, as discussed, *infra*, any such claim lacks merit.

*Martin*, 2010 WL 1740432, at *7 n.4.

sufficient evidence "bears a very heavy burden"). Even when "faced with a record of historical facts that supports conflicting inferences[, a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford*, 334 F. Supp.2d at 303 (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

Petitioner's Ground IV rests primarily on challenging L's credibility. "However, all issues of credibility are to be resolved in favor of the jury's verdict." *Sanford*, 334 F. Supp.2d at 303 (citing *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998); *Maldonado*, 86 F.3d 32, 35 (2d Cir. 1996)); *see also Martin*, 2010 WL 1740432, at *9 (collecting cases). To the extent Petitioner's defense at trial was that, because of marital strife and Stringer's desire to have Strzelecki leave the marital home, Stringer convinced L to fabricate allegations of sexual abuse against Strzelecki, it was the jury's purview to accept or reject that defense in light of the evidence presented. "The Supreme Court recently reaffirmed the fundamental principle 'that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial.'" *Weay v. Haponcik*, No. 05-cv-3866, 2012 WL 70584, at *4 (E.D.N.Y. Jan. 5, 2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). Having reviewed the state court record, this Court concludes that the jury's verdict, which implicitly rejected Petitioner's defense, found ample support in the record; therefore, Petitioner cannot meet his "very heavy burden" warranting the granting habeas relief on the basis of insufficient evidence. *See Cavazos*, 565 U.S. at 2; *see also Jackson*, 443 U.S. at 324 (holding that a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no

rational trier of fact could have found proof of guilt beyond a reasonable doubt"). Similarly, as to the supposed lack of corroboration of Petitioner's statement (*see* Petitioner at Ground IV(a)(4)), the record shows that, at a minimum, L's testimony corroborated the statement, since L clearly testified to Petitioner's having touched her vagina. (*See* October 11, 2011 Trial Tr. at 98-102.) To the extent that the evidence might support a different conclusion, the Court, again, "presume[s] . . . that the trier of fact resolved any such conflicts in favor of the prosecution," and, therefore, "defer[s] to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994)(internal quotation marks omitted). Accordingly, habeas relief cannot be founded upon Petitioner's Ground IV.


IV.     Conclusion

Accordingly, finding the Petitioner has not demonstrated any basis for relief under 28 U.S.C. § 2254, IT IS HEREBY ORDERED that the Petition is DENIED. Further, since Petitioner has failed to make a substantial showing of the denial of a constitutional right, no certification of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez,* 129 F.3d 255, 260 (2d Cir. 1997); *Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir. 2007) (discussing the standard for issuing a certificate of appealability). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith, and, therefore, in *forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Respondent shall make a reasonable effort to ascertain a forwarding address for Petitioner, serve a copy of this Memorandum and Order upon Petitioner at his updated address, and file a declaration of service within three days of the date of

this Order. Once Respondent files proof of service, the Clerk of Court is directed to: dismiss the Petition; enter judgment in favor of Respondent; serve the judgment on Petitioner at his updated address; note service on the docket; and, close this case.

SO ORDERED this 15th day of November 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge